UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HAMPTON,

        Petitioner,               Case Number: 2:11-cv-10429

v.                                   HONORABLE GERALD E. ROSEN

MITCH PERRY,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

      Michigan state prisoner, Charles Hampton, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner, who is currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, challenges his first-degree felony murder conviction on the ground that newly-discovered evidence established his actual innocence.  The Court denies the petition.

**I.**      **Background**

      Petitioner's conviction arises from the beating death of William Heitsch in Pontiac, Michigan, on November 27, 1982.  Heitsch was 90-years old and was known by his family to keep large sums of cash, guns, and a billy club in his home.

      Allen Heitsch, the victim's grandson, testified that he arrived at his grandfather's house at approximately 12:30 p.m., on November 28, 1982.  When his grandfather did not respond to the doorbell, Allen walked to the rear of the house where he saw a basement

window had been smashed. He looked in his grandfather's bedroom window and saw that the room was in disarray. Allen located an extra key that was kept hidden outside the home. He attempted to enter the home through the front door, but something prevented the door from opening. He peered into the home and saw blood on the floor, and his grandfather's body blocking the door's path. Allen then left the home and summoned police. He later determined that cash, guns, and jewelry were missing from his grandfather's home.

Ultimately, police identified Darren Ortega, and then Petitioner as suspects. Petitioner gave several custodial statements. Initially, Petitioner claimed to have been home the day and night of the murder. He stated that he did not commit the murder but knew that two men, named Darren and James, murdered Heitsch. In a second statement, he admitted that Darren came to his home and convinced him to go to Heitsch's house. He then asked that the second statement be ripped up and that he be permitted to start over. In his third statement, he admitted that he and Darren went into Heitsch's backyard and kicked out a basement window. They entered the basement, but found the door to the rest of the home locked. They then left for a period of time. When they returned, Darren through a rock through Heitsch's bedroom window. The men then entered Heitsch's house. Petitioner saw Darren strike Heitsch with a nightstick. Petitioner claimed to have tried to stop Darren from hitting Heitsch.

Carolyn Hardiman, Petitioner's girlfriend, testified that she went on a shopping spree after Heitsch's death with money given to her by Petitioner. In addition, a police

evidence technician testified that a fingerprint found on the door of the closet containing Heitsch's cash and a billy club was identified as Petitioner's fingerprint.

The Oakland County Medical Examiner determined that Heitsch died from multiple blunt force blows to his face and head.

## II. Procedural History

Petitioner and his co-defendant Darren Ortega were jointly tried before separate juries in Oakland County Circuit Court. Petitioner was convicted of first-degree felony murder. On April 4, 1983, Petitioner was sentenced to life in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

> I. The trial court erred in failing to dismiss the charge of first-degree felony murder against the defendant over the objections of defense counsel, or granting a continuance on the grounds that the information was defective in that it failed to allege facts upon which a charge of first-degree felony murder could be based.
>
> II. The trial court erred in refusing to grant a mistrial on defendant's motion after the prosecutor in his opening statement, stated that the defendant was charged with murder in the first degree while in the perpetration of a breaking and entering with the intent to commit a larceny which was contrary to the charge stated in the information.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Hampton*, No. 73378 (Mich. Ct. App. July 27, 1984). Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal. *People v. Hampton*, No. 74854 (Mich. June 3, 1985).

On May 26, 2009, Petitioner filed a motion for relief from judgment in the trial court, arguing that newly-discovered evidence showed that he did not participate in the murder. The trial court denied the motion. *People v. Hampton*, No. 1982 056435 FY (Oakland County Cir. Ct. June 24, 2009). The Michigan Court of Appeals and Michigan Supreme Court both denied Petitioner's applications for leave to appeal the trial Court's denial. *People v. Hampton*, No. 293951 (Mich. Ct. App. Oct. 30, 2009); *People v. Hampton*, No. 140056 (Mich. June 28, 2010).

Petitioner then filed the pending habeas petition. He raises these claims: newly-discovered evidence shows that key prosecution witness Darren Ortega gave perjured testimony and that Petitioner is innocent; and the trial court erred in denying his motion for relief from judgment based upon this newly-discovered evidence.

## III.   Standard

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

4

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented

5

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Discussion**

Petitioner's claims for habeas relief rely upon a single affidavit, that of Marty

Miller. In the affidavit, Miller states that, while incarcerated with co-defendant Darren Ortega, Ortega confessed to Miller that he killed Heitsch and that Petitioner simply helped clean up the scene of the crime after the fact. Petitioner argues that Miller's affidavit demonstrates Petitioner's actual innocence.

It is well-settled that claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Muntaser v. Bradshaw*, 429 F. App'x 515, 521 (6th Cir. 2011) ("[A]n actual innocence claim operates only to excuse a procedural default so that a petitioner may bring an independent constitutional challenge, . . . Given that [Petitioner] alleges only a free-standing claim to relief on the grounds of actual innocence, his claim is not

cognizable . . . and, accordingly, does not serve as a ground for habeas relief."). Consequently, Petitioner's claim that he is actually innocent and has newly-discovered evidence to prove his innocence fails to state a claim upon which habeas relief can be granted. Habeas relief is therefore not warranted on this basis.

Additionally, even if such a claim were viable upon habeas review, Petitioner is not entitled to relief on such a basis. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "[A] credible claim of actual innocence is extremely rare," *Souter v. Jones*, 395 F.3d 577, 600 (6th Cir. 2012), and so "[t]he actual innocence exception should 'remain rare' and 'only be applied in the extraordinary case.'" *Id.* at 590 (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)).

In his affidavit, Marty Miller states that he was incarcerated with Darren Ortega prior to Ortega's trial. In January 1983, Ortega confessed to Miller that he stabbed a man to death in the man's house and then stole items from the home, including a diamond ring. After he killed the man, Ortega asked Petitioner to help him steal the man's appliances. He did not tell Petitioner that he had killed the man. Petitioner found $50,000 in the home, but did not share it with Ortega. If he had, Ortega would have told the prosecutor Petitioner was not involved in the murder. Miller's affidavit, executed over 25 years after the murder, is hearsay evidence that cannot be validated because Ortega died in 2001. In *Freeman v. Trombley*, 483 F. App'x 51, 63 (6th Cir. 2012), the Sixth Circuit Court of Appeals found a witness's purported recantation unreliable in part

8

because it was presented over ten years after the witness recanted, six years after the witness's death, and then only as hearsay testimony in a private detective's unsworn statement. Other than Miller's affidavit, Petitioner provides no other support for his actual innocence claim. The affidavit is insufficient to establish Petitioner's actual innocence. Habeas relief is not warranted on this claim.

Finally, Petitioner claims that the trial court erred in denying his motion for relief from judgment. Nothing in the Constitution requires a state to establish a system of post-conviction review, and thus "claims challenging state collateral post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). This claim is not cognizable on habeas review.

## V.     Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not

9

debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI. Conclusion

Accordingly, **IT IS ORDERED** that petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

        s/Gerald E. Rosen
        Chief Judge, United States District Court

Dated: April 8, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 8, 2013, by electronic and/or ordinary mail.

        s/Julie Owens
        Case Manager, (313) 234-5135